Kelly Lee MUNCY, Kendra Marie Vondersaar, Karen Kay Muncy and Kim Sue Muncy, Appellants–Defendants/Counter–Plaintiffs,

v.

HARLAN BAKERIES, INC., Appellee–Plaintiff/Counter–Defendant.

No. 32A04–1001–PL–9.

Court of Appeals of Indiana.

July 15, 2010.

Lawrence R. Wheatley, Danville, IN, Attorney for Appellants.

Robert L. Hartley, Maggie L. Smith, Thomas A. Withrow, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

## STATEMENT OF THE CASE

Appellants–Defendants/Counter–Plaintiffs, Kelly Lee Muncy, Kendra Marie Vondersaar, Karen Kay Muncy, and Kim Sue Muncy (collectively, the Muncys), appeal the trial court's Findings of Fact and Conclusions of Law entered after remand proceedings, adjusting the prior damages award and ordering that Appellee–Plaintiff/Counter–Defendant, Harlan Bakeries, Inc. (Harlan), abate certain encroachments.

We affirm.

## ISSUES

The Muncys raise two issues on appeal, which we restate as follows:

(1) Whether the trial court exceeded the scope of issues available on remand when it ordered Harlan to pay certain damages and to remove a retaining wall and encroaching curbs and blacktop from the Muncys' property; and

(2) Whether the Muncys are entitled to an award of attorney fees.

## FACTS AND PROCEDURAL HISTORY

This case arises from a property dispute between adjoining landowners, Harlan and the Muncys, and is before us as an appeal of a trial court's Order entered after remand proceedings following this court's decision in *Harlan Bakeries, Inc. v. Muncy*, 835 N.E.2d 1018 (Ind.Ct.App.2005) (*Harlan I*) which partially reversed the original judgment. Harlan and the Muncys own adjoining property on Production Drive in Avon, Indiana. Taken together, both properties form a large rectangle, with the Muncys' property consisting of a smaller rectangle in the southeast corner of the large rectangle. Two common borders exist: one on the north end of the Muncys' property (the North Boundary Line) and one on the west side of the

Muncys' property (the West Boundary Line).

In 2000, Harlan was engaged in a commercial construction project on its property. As part of the project, Harlan began removal of a 15″ corrugated metal storm drainpipe (the West Storm Sewer) which was buried near the West Boundary Line. During this removal work, Harlan encountered resistance from the Muncys and consequently, on September 26, 2000, Harlan filed a complaint for a preliminary injunction and a temporary restraining order. The complaint also included a request for a declaratory judgment regarding the exact locations of the two Boundary Lines and an allegation of trespass. That same day, the trial court entered a temporary restraining order, which (1) required the Muncys to remove their property encroaching on Harlan's project; (2) allowed Harlan to remove the West Storm Sewer pipe; and (3) set Harlan's motion for preliminary injunction for October 12, 2000. After several continuances and after being apprised that Harlan had removed the West Storm Sewer and poured a 130–foot–long, four-foot-high, four-inch-thick, solid concrete wall, the trial court dissolved the temporary restraining order against the Muncys and entered a new restraining order prohibiting Harlan from any further work on the West Storm Sewer until a full hearing could be held.

On November 8, 2000, the Muncys filed their answer, verified counterclaim, and request for preliminary injunction, which sought restoration of the West Storm Sewer and various damages. By April of 2001, Harlan had installed curbing and blacktop over the disputed property line, thereby changing the elevation of Harlan's property and reversing the historical water flow. As a result, in May of 2001, the Muncys filed a petition asking that Harlan be held in contempt for violating the October 12,

2000 order. On December 18, 2001, four days after holding a hearing on the matter, the trial court issued an order finding Harlan in contempt for violating the October 12, 2000 restraining order. The order also fined Harlan $500, awarded $1,000 in attorney fees to the Muncys, and further restrained Harlan from any construction within 10 feet of the West Boundary Line until further order of the trial court.

On June 10–11, and September 9, 2004, the trial court conducted a bench trial. On October 5, 2004, the trial court entered seventy-eight findings, twenty-six conclusions, and judgment, establishing the West and North Boundary Lines at the locations the Muncys requested. For purposes of this appeal, only the location of the West Boundary Line is relevant which the judgment established as being eighteen feet east of, and parallel to, the east side of Harlan's building. As a result of that location, the retaining wall Harlan had constructed and parts of the paving and curbs encroached on the Muncys' land. The trial court also determined that Harlan had improperly removed the West Boundary Sewer pipe. With respect to the Muncys' counterclaim, the judgment awarded the following damages:

| | | |
|---|---|---|
| 1. | Cost of removing concrete wall and replacing 15″ corrugated drain pipe | $142,273.00 |
| 2. | Relocation of personal property | $ 5,235.00 |
| 3. | Loss of use of real estate | $ 14,600.00 |
| 4. | Damages pursuant to I.C. § 34-24-3-1 | $ 25,000.00 |
| 5. | Fill for north end of property—75 loads × $150.00 | $ 11,250.00 |
| 6. | Attorney fees to [the Muncys' counsel] | $ 40,706.12 |

*Harlan I*, 835 N.E.2d at 1029.

Harlan appealed. On October 13, 2005, we affirmed the trial court's decision in part, reversed it in part, and remanded the case back to the trial court for further proceedings. *Id.* at 1041. In light of the evidence presented, we disagreed with the trial court's conclusion that Harlan "unlawfully and in violation of a Temporary Restraining Order removed the" West Storm Sewer. *Id.* at 1034. However, we con-

curred with the trial court's determination of the North and West Boundary Lines. *Id.* at 1030, 1032. The practical result of this finding was that "[w]hile we agree that Harlan could erect a wall on its property, pave its property and raise the elevation of its property, the [trial] court here found that Harlan ventured beyond its property. The [trial] court found that Harlan built the wall on [the *Muncys'*] property." *Id.* at 1033.

Turning to damages, we noted that "[w]hile we will not second-guess the trial court's determination of damages where some evidentiary support exists, we are unable to reconcile certain portions of the order." *Id.* at 1035. We stated, in pertinent part, as follows:

> The trial court determined that the West Boundary Line was eighteen feet from the freezer building, that Harlan installed its concrete wall on the [Muncys'] side of the West Boundary Line, and that the wall "will either actually or potentially further prevent and/or impede the drainage of excess water from the [Muncys] property." As noted [ ], Line 1 of the court's calculation of damages of damages sets out $142,273.00 for removing concrete wall and replacing 15″ corrugated drain pipe. Presumably, the court relied upon Groninger's [the Muncys' expert] written estimate, which contains a grand total of $142,273.00. However, the Groninger estimate includes unspecified costs for removing the concrete wall as well as for constructing a new wall on your [Muncys'] side. This is problematic for various reasons. First, the language in Line 1 of the court's calculation does not seem to require construction of a new wall. Second, according to the court's determination of the West Boundary Line, the wall is *already* on [the Muncys'] side of the West Boundary Line. Thus, to require the removal of the current wall on [the Muncys'] property and then the installation of a new wall on [the Muncys'] property is perplexing. Third construction of a new wall would seem to be inconsistent with the conclusion that the wall creates drainage problems for [the Muncys]. It is conceivable that [the Muncys'] would prefer some other type of wall, but we have not been provided with evidence to that effect. Moreover, to the extent that a new wall is inappropriate, Groninger's estimate is not sufficiently detailed to permit a simple excision of the amount awarded for construction of a new wall.

*Id.* at 1035–36. (internal citations omitted).

We also reversed the trial court's damage award with respect to Line 2 (relocation of personal property of $ 5,235.00) and with respect to the award on Line 5 of the trial court's Order (fill for north end of the property of $11,250.00) because the Groninger estimate on which the trial court had based Line 1 included the same materials. *See id.* at 1036, 1037. In sum, we concluded that

> we do find error in conclusion # 5 (Harlan unlawfully and in violation of a Temporary Restraining Order removed the Private Drain). Of additional concern is the portion of damages related to the installation of a new wall (see discussion of Lines 1 and 2) and the apparent double recovery for fill (see Line 5 discussion).... Finally, we see no abuse of discretion in the court's finding of contempt and accompanying order for payment of a $500 fine and $1,000 in attorney fees. Accordingly, we affirm the majority of the judgment, but reverse in part and remand for a hearing and reconsideration of damages in light of our opinion.

*Id.* at 1041.

On April 7, 2006, after remand to the trial court, the Muncys filed a Motion to

Amend Judgment, requesting to amend the judgment to add continuing attorney fees and loss of use damages. On May 18, 2006, the trial court denied the Muncys' motion "as any additional amount of damages for trespass and/or attorney [fees] will need to be presented at a hearing." (Appellee's App. p. 43). The Muncys never requested a hearing on their motion. On February 15, 2007, the trial court conducted an evidentiary hearing with respect to damages. Although Donald Groninger (Groninger), the Muncys' expert witness, was present during the hearing, the Muncys did not call him to the witness stand to testify about his un-itemized $142,273.00 estimate. In fact, during the hearing, the Muncys offered no evidence with respect to the damage award issues on remand. The only evidence covering any costs was presented by Harlan's expert witnesses.

Following the evidentiary hearing on February 15, 2007, the trial court failed to rule and, at the Muncys' behest, the case was assigned to another trial judge on September 22, 2009. On November 4, 2009, a hearing was conducted. Both parties agreed that the trial court should take judicial notice of the prior proceedings and disavowed any wish to be heard further. Thereafter, on November 9, 2009, the trial court issued his supplemental judgment, determining in pertinent part:

## II.   FINDINGS OF FACT

\*      \*      \*

12.   There is no dispute that as part of the construction project that gave rise to this litigation, Harlan lowered the elevation of its property along the south end of the East–West Boundary and created a difference in elevation between Harlan's property and Muncys' property at the location sufficient to require a retaining wall to prevent Muncys' ground from collapsing onto Harlan's property.

13.   Other than Muncys' stated desire to have control over a retaining wall, there is no evidence that a retaining wall—necessitated by Harlan's change to the elevation of its property—needs to be located on Muncys' property, rather than Harlan's property.

14.   Muncys' counsel admitted during the February 15, 2007 hearing that the Groninger estimate includes the same work as covered by the damage award of $11,250.00, namely filling the north end of Muncys' property to raise its elevation.

15.   There is no evidence from which the [c]ourt can determine what dollar amount Groninger assigned to the work of filling the north end of Muncys' property.

16.   The only evidence of the cost to fill the north end of Muncys' property is the testimony of Kelly Muncy during the 2004 trial on which the October 5, 2004 Judgment based the damage award to Muncys of $11,250.00.

17.   There is no evidence from which the [c]ourt can determine what dollar amount Groninger assigned to the work of removing the existing retaining wall.

18.   The only evidence of the cost to remove the existing retaining wall from the Muncys' property is the estimate of Mr. Christopher Lynch of Bowen Engineering in the amount of $4,082.00.

19.   There is no evidence from which the [c]ourt can determine what amount Groninger included in Exhibit A10 for "New Wall on Your Side."

20.   There is no evidence from which the [c]ourt can determine which of the items of material or work listed on Groninger's estimate are necessary to replace the 15″ corrugated drainpipe that was removed from Muncys' property.

21. Even if the [c]ourt could determine which items of material or work listed on Groninger's estimate relate to replacing the 15″ corrugated drain pipe, there is no evidence from which the [c]ourt can determine the dollar amounts Groninger assigned to those items.

22. The only evidence of the cost to replace the 15″ corrugated drain pipe is the estimate of Mr. Christopher Lynch of Bowen Engineering in the amount of $8,959.00.

23. Regardless of whether a new retaining wall is constructed on Muncys' property, Muncys will be required to move their personal property for purposes of removing the existing retaining wall and replacing the 15″ corrugated drain pipe.

\*     \*     \*

### III. CONCLUSIONS OF LAW

\*     \*     \*

2. There remains no evidence that allows the [c]ourt to separate from the Groninger estimate any items of work of materials and determine the dollar amount [ ] Groninger allocated to them. Therefore the [c]ourt cannot utilize the Groninger estimate to determine any element of Muncys' damages.

3. The only evidence of the separate reasonable cost of replacing the 15″ corrugated drain pipe that was removed from Muncys' property is [ ] Lynch's estimate of $8,959.00. Muncys' should be awarded $8,959.00 as damages for the cost to replace the 15″ corrugated drain pipe.

4. The retaining wall constructed by Harlan needs to be removed from Muncys' property to remedy the encroachment.

5. Because the removal of the existing retaining wall will require significant access to Muncys' property, which access Muncys' prefer Harlan not to have, as between the remedy or ordering Harlan to remove the wall and the remedy of awarding as damages to Muncys the reasonable cost of removing the wall, the latter is the appropriate remedy.

6. The only evidence of record and the reasonable cost to remove the wall is [ ] Lynch's estimate of $4,082.00. Muncys should be awarded $4,082.00 as damages for the cost to remove the wall.

7. Muncys' preference to exert control over a retaining wall is insufficient grounds to award Muncys the cost of building a new retaining wall on Muncys' property.

8. It was Harlan that lowered the elevation of its property and created the need for a retaining wall. An award to Muncys of the cost of building a retaining wall on Muncys' property may, by separating the responsibility from the authority to provide lateral support, create future disputes or at least uncertainty. Should a wall constructed by Muncys prove faulty or need maintenance, a dispute may arise over which party bears responsibility for the expense of repairing and maintaining the wall. Harlan could reasonably argue that by building the retaining wall on their property, Muncys assumed the duty to prevent collapse of their ground onto Harlan's property, and therefore Muncys must bear all future expense to fulfill that duty, as well as the liability for any breach of that duty. Muncys could argue that, since it was Harlan's lowering of the elevation of its property created the need for a retaining wall, Harlan must bear all future expense related to the wall, even though it is located on Muncys' property. In the worst case scenario, Muncys could receive a damage award, spend it for something else,

and never build any new retaining wall. A future collapse of Muncys' property on Harlan's property, could not only damage Muncys' property, but could also damage Harlan's property, or at least interfere with Harlan's use of its property. Sorting out the liability on such a situation could prove difficult if not impossible.

9. The [c]ourt recognizes that it could obviate some of those difficulties, were it to award Muncys the cost to rebuild a wall on Muncys' property, and ordering which party bears the future responsibility to repair and maintain the wall. Assigning the responsibility to Harlan is an invitation to everlasting dispute, since the wall would be located on Muncys' property. Muncys could damage the wall or interfere with Harlan's access to repair and maintain the wall. Depriving Muncys of any use of the wall in order to prevent them from damaging it, and granting Harlan open access to repair and maintain the wall would effectively deprive Muncys of control. The alternative of assigning the future duty to repair and maintain the wall to Muncys does not seem to be a reasonable alternative. While Muncys expressed a preference to control the wall by having it build on their property, they have expressed no desire to assume a duty to provide lateral support along with liability for breach of that duty.

10. Since it is Harlan's use of its property that created the need for a retaining wall, the appropriate remedy is to leave the responsibility to provide a retaining wall on Harlan, and also leave with Harlan the commensurate authority to fulfill that responsibility by building, and thereafter repairing and maintaining, a retaining wall on Harlan's property.

11. Accordingly, there is no need to build a new retaining wall on Muncys'

property, and Muncys should not be awarded the costs of doing so as damages.

12. The pavement and/or curbing constructed by Harlan needs to be removed from Muncys' property to remedy the encroachment.

13. Harlan should be the party responsible for removing any encroachment pavement and/or curbing, except to the extent that it cannot do so without risk of damage to Muncys' property, including the existing retaining wall, ownership of which is transferred to Muncys hereinafter.

14. Since the [c]ourt is not awarding any damages based on the Groninger estimate, there is no longer any risk to a double recovery to Muncys because another item of damage might also be included in the Groninger's estimate. Therefore, the [c]ourt can and should restore the damage award of $11,250.00 for fill for the north end of Muncys' property.

15. The [c]ourt can and should restore the damage award of $5,235.00 for relocation of personal property because, despite the fact that a new retaining wall will not be constructed on Muncys' property, Muncys will be required to move their personal property in connection with removing the existing retaining wall and replacing the 15″ corrugated drain pipe.

16. Because the [c]ourt is not ordering removal of the existing retaining wall, but rather awarding Muncys damages for its removal, the [c]ourt should remove future uncertainty or dispute over responsibility with respect to the existing wall by transferring ownership of it, and full responsibility for it, to Muncys.

IV. JUDGMENT

IT IS ORDERED, ADJUDGED AND DECREED that:

1. As to the damage awards in the October 5, 2004 Judgment which were reversed on appeal, [the Muncys] be and are hereby given an additional damage award judgment on their counter-claim against Harlan [ ], as follows:

| | |
|---|---|
| A. Costs of removing concrete wall | $ 4,082.00 |
| B. Costs of replacing 15″ corrugated storm drain | $ 8,959.00 |
| C. Cost of past and future relocation of Muncys' personal property | $ 5,235.00 |
| D. Fill for north-end of Muncys' property | $11,250.00 |
| TOTAL | $29,526.00 |

2. Harlan shall remove all pavement and/or curbing which lies on the Muncys' side of the East–West property line, provided, however, that Harlan shall not remove any pavement and/or curbing (i) if doing so could permanently interfere with Muncys' property, including the existing retaining wall, (ii) if doing so could permanently interfere with Muncys' use of their property, or (iii) where any condition on Muncys' property not created by Harlan renders it unsafe, impractical or impossible to comply with this order.

3. Except (i) around existing drainage pipes, (ii) where doing so could permanently damage Muncys' property or permanently interfere with Muncys' use of their property, or (iii) where any condition on Muncys' property not created by Harlan renders it unsafe, impractical or impossible to do so, Harlan shall backfill, with clean fill dirt, on Muncys' property where it removes pavement and/or curbing. Along the existing retaining wall said backfill shall create a reasonably uniform grade, level with the pavement on Harlan's property. Along the remainder of the East–West boundary said backfill shall · create a reasonably uniform grade between the elevation of the pavement on Harlan's property and the corresponding existing elevation of Muncys' property at a distance no more than three feet to the east of the East–West boundary.

4. Unless the time if extended by this [c]ourt for good cause shown, Harlan shall complete the required removal of pavement and/or curbing and backfilling within ninety (90) days of the date of this Judgment.

5. Harlan, and any persons or entities with whom it contracts for purposes of complying with this Judgment, are hereby authorized and granted reasonable access to the Muncys' property for purposes of complying with this Judgment. Harlan shall provide counsel for the Muncys with at least forty-eight (48) hours' advance notice of the dates and times when Harlan, or any person or entities with which Harlan contracts, will require access to Muncys' property pursuant to the foregoing grant of authority. Such notice shall describe the nature of the access to Muncys' property that will be required, and shall describe nature of the activities that will occur on Muncys' property.

6. The reasonable access granted to Harlan for purposes of complying with this Judgment is, without prior express permission from this [c]ourt, or prior written permission from Muncys, limited to going no more than five feet onto Muncys' property in the areas north of the existing retaining wall, and in the area along the existing retaining wall, Harlan shall stay on the west side of the retaining wall.

7. Muncys shall not interfere with Harlan's compliance with this Judgment, either directly or indirectly, including, but not limited to, creating any condition on Muncys' land which makes Harlan's compliance with this Judgment more difficult, more expensive, or more risky.

8. Harlan shall notify Muncys' counsel in writing, of the date Harlan intends

to commence removal of pavement and/or curbing, said notice to be given at least fifteen (15) days before commencement date Harlan specifies.

9. At least two (2) days before the commencement date specified by Harlan in the foregoing notice, Muncys shall move all tangible property on Muncys' land at least three feet away from all curbing Harlan is required to remove, and keep all tangible property so moved until Harlan has completed the required removal and backfilling. The [c]ourt does not make this provision applicable to pavement because, with respect to any pavement that abuts curbing, if Muncys' tangible property is at least three feet away from the curbing, it will also be at least three feet away from any pavement that abuts the curbing. However, it is not the intent of the [c]ourt to require Muncys to move their tangible property away from pavement that abuts the retaining wall, but only to require the Muncys to remove their property from the pavement so that the pavement may be removed.

10. At least two (2) days before the commencement date specified by Harlan in the foregoing notice, Muncys shall remove from all pavement that abuts the existing retaining wall, all tangible property, and shall keep all tangible property so removed from that area until Harlan has completed the required removal and backfilling.

11. Complete title and ownership of the existing retaining wall, and any abutting pavement which Harlan cannot remove because to do so would risk damage to the wall or other property of Muncys, is hereby transferred from Harlan to Muncys.

12. The [c]ourt does not enter an order with respect to the construction of a new retaining wall by Harlan, because,

by this Judgment, the [c]ourt does not intend to disturb or alter any already existing legal duties as between the parties with respect to natural support. The [c]ourt will not presume that either party will, in the future, fail to fulfill any legal duties with respect to lateral support. Even if the [c]ourt were inclined to indulge in such a presumption, the [c]ourt does not have before it sufficient evidence to frame reasonable and specific orders to enforce such duties.

(Appellant's App. pp. 333–44).

The Muncys now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

This cause comes before us as an appeal from the trial court's Order on remand. Whereas the case initially arose from a boundary dispute between the Muncys and Harlan, the remaining issues now before us involve questions of procedure. In essence, the Muncys contend that the trial court's Order exceeded the scope of issues available on remand.

### I. *Standard of Review*

Where, as here, the trial court made findings of fact and conclusions of law, our review is two-tiered: we determine whether the evidence supports the trial court's findings and we determine whether the findings support the judgment. *Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1031 (Ind.2004). We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and conclusions which rely upon those findings. *Id.* In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favor-

able to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

## II. *Scope of Issues on Remand*

The Muncys challenge the trial court's ruling on the issues on remand. Specifically, they assert that the trial court did not limit its ruling to the remanded issues and corresponding awarded damages as specified in *Harlan I* but instead imposed significant additional conditions and findings "far beyond those remanded" and even "went as far as to designate who will make the repairs and what type of materials will be used." (Appellant's Brief p. 20).

■ Any action taken upon remand must conform to the opinion and order promulgated by the court of appeals. *Hidden Valley Lake Prop. Owners Ass'n v. HVL Utilities, Inc.*, 441 N.E.2d 1388, 1389 (Ind.Ct.App.1982), *petition for reh'g granted on other grounds*, 445 N.E.2d 575 (Ind.Ct.App.1983). Nevertheless, upon remand some discretion is vested in the lower court, depending upon the circumstances of the case and the terms of the opinion ordering further action. Therefore, an order, like here, "to take further action consistent with the opinion" does not mandate any particular action, but requires action consistent with the terms of the opinion. *State ex rel. Standard Oil Co. v. Review Bd. of Indiana Employment Sec. Div.*, 230 Ind. 1, 101 N.E.2d 60, 62 (1951).

*Harlan I* presented the trial court with three issues on remand: (1) the possible installation of a new wall; (2) the award for relocation of personal property; and (3) the apparent double recovery for fill. We consequently directed the trial court to conduct a hearing and reconsider these issues in light of our opinion.

## A. *The New Retaining Wall*

While *Harlan I* determined that the wall was erroneously built on the Muncys' property, we were hesitant in imposing an exact solution to the encroachment. *See Harlan I*, 835 N.E.2d at 1035–36. Although we initially focused on the Groninger estimate, we also noted the inconsistencies within the document and were equally cognizant of the inherent problems in requiring one of the parties to build a new wall. *See id.* As such, we remanded the issue back to the trial court for "hearing and reconsideration of damages in light of our opinion." *Id.* at 1041.

On remand, the trial court conducted a hearing and made several very well-informed and detailed findings and conclusions as to the how, who, and where a new wall should be built. The Muncys dispute this elaborate decision, apparently arguing that because they do not wish Harlan to trespass on their property, the Muncys should be given not only the right to demolish but also the right to rebuild the retaining wall in a proper location. We disagree.

■ As shown by the facts, we are faced with very contentious and litigious parties. At the moment, this lawsuit spans more than a decade, starting in 2000 and culminating in this appeal on remand. By instructing the trial court on remand to consider the damages in light of our opinion, *Harlan I* instilled discretion on the part of the trial court in determining whether a new wall should be built and the appropriate amount of damages this would entail. *See id.; State ex rel. Standard Oil Co.*, 101 N.E.2d at 62.

Despite the fact that the Muncys did not present any evidence to clarify the Groninger estimate, the trial court made a thoughtful decision, attempting to provide for all exigencies. As such, the trial court awarded damages to the Muncys to re-

move the existing retaining wall, if they so desired, so that Harlan would not have to enter the Muncys' property. At the same time, the trial court was mindful that Harlan's action had created the need for a retaining wall and therefore apportioned the construction of a new wall providing lateral support to Harlan on its property, as well as the commensurate responsibility for repairing and maintaining this wall. The trial court awarded damages, as presented by Harlan's experts, corresponding to these findings. In light of the evidence before us, we conclude that the trial court should be commended for its decision, which falls well within the confines of the remand imposed by our decision in *Harlan I.*

### B. *Damages for Relocation of Personal Property*

Again, our opinion in *Harlan I* handed the trial court discretionary power to determine the appropriate amount of damages for relocation of personal property to the extent that these damages relate to the installation of a new retaining wall. *See Harlan I,* at 1036, 1041. The trial court properly concluded that even though a new retaining wall will not be constructed on the Muncys' property, the Muncys will nevertheless be required to move their personal property when they remove the existing retaining wall and replace the 15″ West Storm Sewer. Accordingly, we do not find error here.

### C. *The Recovery for Fill*

With respect to the apparent double recovery for fill, as noted in *Harlan I,* the Muncys now acknowledge in their appellate brief that this was indeed a double award. In addition, we note that because the trial court on remand no longer relies on the Groninger estimate to award damages, the risk for a double reward is nonexistent. Therefore, we agree with the

trial court's restoration of the original damage award for fill for the north end.

### III. *Attorney Fees*

As a second issue, the Muncys contend that the trial court erred by refusing to amend the Judgment to supplement the loss of use damages during the appeal and the incurrence of additional attorney fees in defending the original judgment. However, besides listing this issue in their Statement of Issues, the Muncys fail to develop this claim in the Argument section of their brief. As such, we find that they waived the issue for our review. *See* Ind. Appellate Rule 46(A)(8)(a). Moreover, even if we were to consider the issue on its merit s, we would be unable to reach a decision as the Muncys never requested a hearing on attorney fees nor did they present any evidence during the hearing before the trial court on remand.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not exceed the scope of issues available on remand. Additionally, we find that the Muncys waived the issue of attorney fees.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.