## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEES |
|---|---|
| John A. Kraft | Mark J. Crandley |
| Young Lind Endres & Kraft | Barnes & Thornburg, LLP |
| New Albany, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wayne Zollman and Teresa Zollman, | December 21, 2018 |
| *Appellants-Defendants,* | Court of Appeals Case No. 18A-PL-1537 |
| v. | Appeal from the Clark Circuit Court |
| James Albert Costello and Lisa Renee Costello, | The Honorable Joseph P. Weber, Judge |
| *Appellees-Plaintiffs.* | Trial Court Cause No. 10C03-0901-PL-1 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Defendants, Wayne and Teresa Zollman (collectively, Zollman), appeal the trial court's findings of fact and conclusions thereon in favor of Appellee-Plaintiffs, James Albert and Lisa Renee Costello (collectively, Costello) awarding Costello damages in the amount of $41,543 after Zollman destroyed 31 trees on Costello's property.

We affirm.

# ISSUES

Zollman presents us with three issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by finding that Zollman's maintenance of a lime pile uphill from Costello's property line and trees was the direct cause of the destruction of the trees;

(2) Whether the trial court abused its discretion by admitting expert testimony in the form of an opinion pursuant to Indiana Rule of Evidence 703; and

(3) Whether the trial court's damage award was supported by sufficient evidence.

# FACTS AND PROCEDURAL HISTORY

Zollman and Costello are neighbors, both owning adjacent farming properties in Clark County, Indiana. The boundary line between the two contiguous properties is marked by a fence. The Costello property included 31 mature ash

trees, clustered near each other close to the Zollman land, which created an "arboreal setting" in the back of Costello's property. (Transcript p. 6). At a certain point, Costello noticed that the trees began to rot, wither, and die, while, at the same time, Zollman had piled lime dust uphill from the Costello's property line and the tree cluster. After noticing the trees' deterioration, Costello took soil samples from around the tree trunks for testing. Eventually, the trees rotted from the ground up and the entire cluster died and had to be removed.

[5] On October 20, 2005, Costello filed his initial Complaint against Zollman to resolve a dispute pertaining to the boundary line between the two properties. On August 15, 2011, Costello amended his Complaint, adding a claim for trespass and a request for damages due to the destruction of the 31 ash trees. On January 14, 2013, Costello filed his motion for summary judgment, which was denied by the trial court on August 26, 2013. Approximately a year later, on August 14 and 20, 2014, the trial court conducted a bench trial. On October 28, 2014, the trial court issued its judgment, granting Zollman the property east of the fence line and awarding a monetary judgment against Costello. As to the trespass claim, the trial court concluded that there was no evidence to support Costello's damage claim for the 31 ash trees.

[6] Costello appealed the trial court's judgment. In our memorandum opinion in *Costello v. Zollman*, 2016 WL 3060139 (May 31, 2016), *trans. denied (Costello I)*, we determined that there was sufficient evidence to support Costello's trespass claim, and we reversed the trial court on that issue. On October 20, 2017, the

trial court held a hearing on the remanded issue. Two months later, on December 20, 2017, the trial court entered its Order, finding that "Zollman caused the loss of Costello's trees and that the trees were appropriately valued at $41,543 and that amount is hereby awarded to [Costello]." (Appellant's App. Vol. II, p. 28). After Zollman moved for reconsideration of the Order due to lack of findings and conclusions of law, Costello tendered his proposed findings. The trial court adopted these findings and reaffirmed its judgment award in favor of Costello.

[7] Zollman now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[8] Where, as here, the trial court enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), our standard of review is well-settled. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Kwolek v. Swickard*, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011), *trans. denied*. In deference to the trial court's proximity to the issues, we disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id*. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id*. Challengers must establish that the trial court's findings are clearly erroneous. *Id*. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. *Id*. However,

while we defer substantially to findings of fact, we do not do so to conclusions of law. *Id*. Additionally, a judgment is erroneous under Indiana Trial Rule 52, if it relies on an incorrect legal standard. *Id*. We evaluate questions of law *de novo* and owe no deference to a trial court's determination of such questions. *Id*.

[9] We note that in this case, the trial court adopted Costello's proposed findings *verbatim*. Although wholesale adoption is not prohibited, we do not encourage trial courts to engage in this practice. *Dallas v. Cessna*, 968 N.E.2d 291, 296 (Ind. Ct. App. 2012). We have recognized that "this practice weakens our confidence as an appellate court that the findings are the result of the considered judgment by the trial court." *Id*. (quoting *Carpenter v. Carpenter*, 891 N.E.2d 587, 593 (Ind. Ct. App. 2008)). While we do not apply an altered standard of review when a trial court adopts a party's findings *verbatim*, "near *verbatim* reproductions may appropriately justify cautious appellate scrutiny." *Id*.

## II. *Cause of Damages*

[10] Zollman contends that the trial court erred in concluding that Zollman's trespass on Costello's property was responsible for the destruction of the trees. Specifically, in *Costello I*, this court addressed Costello's claim of trespass against Zollman and articulated certain findings before reversing the trial court's conclusion that there was no evidence to support a trespass claim and

remanding to the trial court.  Zollman now requests this court to revisit this evidence.

[11]  At common law, a plaintiff bringing a trespass action must establish two elements:  (1) the plaintiff must show he possessed the land when the alleged trespass occurred, and (2) the plaintiff must demonstrate the alleged trespasser entered the land without legal right.  *Holland v. Steele*, 961 N.E.2d 516, 525 (Ind. Ct. App. 2010), *trans. denied*.  Relying on *Lever Bros. Co. v. Langdoc*, 655 N.E.2d 577, 582 (Ind. Ct. App. 1995), we concluded in *Costello I*, that "a trespass could occur if there was a direct causal relation between the actor's conduct and the intrusion of the foreign matter upon the possessor's land that caused the harm." *Costello I*, at *9.  After reviewing the record of the trial court's proceedings, we found that:

> It was undisputed the Zollmans stored lime dust piles near their barn, the trees were downhill from the barn, the Costellos have never used lime on their property, lime increases the pH levels in soil, and high pH levels harm trees.  Based on these undisputed facts, the laboratory results [Costello] provided to Mills [the Costellos' certified arborist], and Mills' experience as a certified arborist, Mills concluded—in his professional opinion—there was a causal connection between the lime on the Zollman Real Estate and the death of the Costellos' trees.  Because we conclude the trial court's findings are clearly erroneous, coupled with the fact the trial court made no other findings pertaining to the issue, we remand to the trial court to enter further findings on this issue consistent with the evidence presented.

*Costello I*, at *11.

[12] Any action taken upon remand must conform to the opinion and order promulgated by the court of appeals. *Muncy v. Harlan Bakeries, Inc.*, 930 N.E.2d 591, 600 (Ind. Ct. App. 2010). Nevertheless, upon remand some discretion is vested in the lower court, depending on the circumstances of the case and the terms of the opinion ordering further action. *Id.* Therefore, an order, like here 'to enter further findings on this issue consistent with the evidence presented,' "requires action consistent with the terms of the opinion." *Id.*

[13] Upon remand, the trial court entered findings, supporting *Costello I*'s analysis, and concluding in turn that "[b]y maintaining a large lime pile directly uphill from the tress and allowing it to run downhill into [Costello's] property, [Zollman] committed the very tort described in *Lever Bros.*, and in the [c]ourt of [a]ppeals' opinion in this case." (Appellant's App. Vol. II, p. 27). As the trial court's findings of fact and conclusion thereon are in line with our opinion in *Costello I*, we decline Zollman's invitation to reweigh the evidence yet again and we affirm the trial court's conclusion of Zollman's trespass as the cause of damages.

### III. *Opinion Testimony*

[14] Not disputing the admissibility of Costello's expert testimony on the issue of valuation, Zollman contends that the trial court incorrectly admitted the expert's testimony on the issue of causation. Zollman maintains that because the expert's opinions about the soil's pH composition were based on a report

generated by an independent company and the expert had not personally taken or tested the soil samples, it was inappropriate to rely on his testimony.

[15] We review a trial court's decision on the admissibility of the evidence for an abuse of discretion, which occurs when the decision is against the logic and effect of the facts and circumstances before the court. *Weinberger v. Boyer*, 956 N.E.2d 1095, 1104 (Ind. Ct. App. 2011), *trans. denied*. Even where the trial court's decision is erroneous; however, we will not reverse the judgment where the decision does not prejudice the substantial rights of the parties. *Id*.

[16] Although inadmissible evidence typically cannot be introduced at trial, inadmissible evidence may nevertheless be relied upon for the purposes of expert-rendered opinion testimony. Indiana Rule of Evidence 703 provides that

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. Experts may testify to opinions based on inadmissible evidence provided that it is of the type reasonably relied upon by experts in the field.

There are limits however to the extent that a party proffers opinion testimony that is merely a "conduit" for placing inadmissible evidence before the court without meaningful opportunities for cross-examination. *See Barrix v. Jackson*, 973 N.E.2d 22, 26 (Ind. Ct. App. 2012), *trans. denied*. As our supreme court has recognized,

> Some experts customarily gather information from a variety of other experts and authoritative sources and rely upon it in

reaching their opinions. When an expert witness' own independent opinion is arrived at in this manner and it is introduced into evidence and the expert witness is subject to cross-examination, that part of the substrata of information which aided in the formation of the opinion, though hearsay in nature and though not falling within any hearsay exception, may nevertheless be admissible for use by the trier of fact in judging the weight of the opinion.

*Id.* (quoting *Miller v. State*, 575 N.E.2d 272, 274 (Ind. 1991)). However, such hearsay is inadmissible where it is merely a restatement of another's conclusion "as a conclusory answer to an ultimate fact in issue," such that the veracity of the statement is not "subject to the test of cross-examination." *Id.*

[17] The evidence reflects that, upon first noticing the trees' deterioration, Costello took soil samples from around the trunks which she had tested by an independent company. At trial, Costello introduced Greg Mills (Mills), a certified arborist—whose credentials were not challenged by Zollman—as her expert. Mills explained that the "compounds of the soil" are included in the "field of arbor culture." (Tr. First Trial, Vol. II, p. 90). He elaborated that even though he occasionally performs soil tests for customers, Costello only engaged him to calculate the value of the damaged trees. During the bench trial, Mills testified that Costello sent him the report of the soil sample analysis by certified mail. Based on his review of the test results, Mills reached his own independent conclusions. He explained that the test results of the soil indicated a high pH, in "the category called alkaline." (Tr. First Trial, Vol. II, p. 112). Offering his own study of the test results performed by the testing company, Mills explained

the results' meaning and reached his conclusion as to what happened to the trees based on his evaluation of the test results, opining that the pH content of the soil killed the trees.

[18] Instead of being a mere conduit to introduce the report and to regurgitate the report's information, Mills interpreted and explained the test results. Subjecting these results to his independent analysis, Mills reached his own conclusions, which were subject to cross-examination by Zollman. Accordingly, we cannot conclude that the trial court abused its discretion by admitting Mills' testimony with respect to the cause of the trees' deterioration.

## IV. *Damage Award*

[19] Lastly, Zollman challenges the damage award in the amount of $41,543 granted to Costello by the trial court. Zollman contends that although Mills testified about the general valuation of the trees, no evidence was introduced "as to the value of each tree purportedly lost." (Appellant's Br. p. 18).

[20] During the bench trial, Costello offered Mills' report into evidence identifying the value of each of the 31 ash trees. Mills testified on the commonly-used calculation method, explaining that he measured the diameter of each tree stump, examined the cost of replacement for a tree with that specific diameter, determined the price per square inch from that amount, calculated the difference between the replacement trunk and the trunk of the existing tree, and applied certain adjustments based on the condition of the tree, location, and species. Mills explained that he employed this methodology for each of the

trees. Based on his calculations, the total value of the trees amounted to $41,543. Zollman did not object to Mills' evaluation testimony or to the introduction of his report into evidence, nor did Zollman cross-examine Mills on the calculations or offer rebuttal evidence. Therefore, as Costello introduced sufficient evidence to support Mills' valuation of the trees, the trial court properly entered the damage award in favor of Costello.

## CONCLUSION

Based on the foregoing, we hold that the trial court did not abuse its discretion by finding that Zollman's maintenance of a lime pile uphill from Costello's property line and trees was the direct cause of the destruction of the trees; the trial court properly admitted expert testimony in the form of an opinion; and the trial court's damage award was supported by sufficient evidence.

Affirmed.

Vaidik, C. J. and Kirsch, J. concur